409 A.2d 2

**Rita FYE, Appellant,**

**v.**

**CENTRAL TRANSPORTATION INC., Appellee.**

Supreme Court of Pennsylvania.

Submitted Sept. 26, 1979.

Decided Dec. 21, 1979.

138

Robert E. Thomas, Kaminsky, Kelly & Wharton, Johnstown, for appellant.

Richard T. Williams, Sr., Windber, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant filed a complaint in the Court of Common Pleas of Cambria County, sounding in equity and alleging a violation of the Pennsylvania Human Relations Act [1] in that she was unlawfully discriminated against, based on her sex, by her former employer. In response to the complaint, appellee filed preliminary objections raising *inter alia*, the jurisdic-

1. Act of October 27, 1955, P.L. 744, § 1 et seq., as amended; 43 P.S. § 951 et seq.

tion of the court. On May 26, 1978, the learned Chancellor sustained the objections and dismissed the complaint. The instant appeal to this Court from the May 26, 1978 order was taken pursuant to former Appellate Court Jurisdiction Act of 1970, section 202(4); Act 1970, July 31, P.L. 673, No. 223, art. II, § 202(4); 17 P.S. 211.202(4) (Supp.1978–79).[2]

■ The issue in this appeal is a very narrow one. The question is whether appellant's initial election to seek redress under the Pennsylvania Human Relations Act (PHRA),[3] divested jurisdiction of a court in equity to entertain the complaint subsequently filed by appellant. The learned Chancellor answered this question in the affirmative. We agree and now affirm the decree of the court below.

In her complaint, appellant asserts that while she was employed as a school bus driver she became pregnant and, because of complications, she was ordered by her doctor to stop work until after the birth of the child. When she notified her company that she was physically able to return to work, she was refused employment. She contends that her treatment was contrary to situations where male employees, serving in the same or a similar capacity, returned after a protracted illness. It was admitted by appellant that before instituting the instant complaint, she had filed a complaint with the Pennsylvania Human Relations Commission (PHRC). The action before the PHRC was terminated after an investigation at appellant's request in deference to

2. This appeal has been erroneously filed in this Court. The decree appealed from was after July 1, 1976, thus section 202(4) had been suspended absolutely by R.A.P. 5105(a) and the appeal was governed by R.A.P. 702(b) (directing that appeals in equity matters of this type are to the Superior Court). However, since there has been no objection by the appellee to the jurisdiction of this Court and the record is presently before us, judicial economy and a desire for expeditious dispositions prompts us to decide the merits. See R.A.P. 741(a).

3. Act of October 27, 1955, P.L. 744, § 1 et seq., as amended; 43 P.S. § 951.

a proceeding before the Equal Opportunity Employment Commission,[4] also initiated by appellant.

The basis for the jurisdictional challenge raised by appellee in the preliminary objections to the complaint was section 12 of the PHRA, 43 P.S. § 962 (Supp.1978–79). Section 12(b) in pertinent part provides:

.  .  . , but as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without resorting to the procedure provided in this act, [she] may not subsequently resort to the procedure herein.

The General Assembly, recognizing the invidiousness and the pervasiveness of the practice of discrimination,[5] attempted by the PHRA to create a procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who have been unjustly injured thereby. Although attempting to fashion a special remedy to meet this illusive and deceptive evil, the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury sustained. The legislature recognizing that the effectiveness of the procedure it had created would be enhanced by the exclusivity of the provisions of the Act, and the undesirability of allowing the person aggrieved to commence several different actions for relief, *Daly v. School Dist. of Darby Tp.*, 434 Pa. 286, 252 A.2d 638 (1969), provided an election for the complaining person to opt for relief under the provisions

**4.** 42 U.S.C.A. § 2000e–4 (1972).

**5.** The findings and declaration of policy set forth in the first section of the Act states in part:

The practice or policy of discrimination against individuals or groups  .  .  .  is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state.
43 P.S. § 952 [Supp.1978–79]

of PHRA or the right to seek redress by other remedies that might be available. Thus, PHRA provides that when the statutory procedure is invoked, it is exclusive. *Com. Penna. Human Relations Commission v. Feeser*, 469 Pa. 173, 364 A.2d 1324 (1976). Likewise, where the complaining party initially seeks relief without resorting to the provisions of the PHRA, he or she is barred from subsequently doing so. *See Daly v. School Dist. of Darby Tp., supra.*

Appellant acknowledges the general principle of the exclusivity of the PHRA remedy but argues that the present case falls within the limited exceptions provided for under the act. Specifically, appellant argues that section 12(c) should be construed to permit recourse to the courts of common pleas under the facts of this case. Prior to 1974, a complainant invoking the procedure of this act was barred from seeking any other remedy for redress of the asserted grievance. And this rule was without exception. By the 1974 amendment to section 12, a narrow exception was carved in the rule of exclusivity. Section 12(c) provides that the rights of a complainant invoking the procedures under the PHRA shall not be foreclosed from resort to the courts, "if within (1) year after filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, . . . " Here appellant's file with the PHRC was closed at her request, therefore neither of the conditions provided by section 12(c) have been met.

Appellant urges that since the role of the agency was carried out, albeit not by the designated agency but by the Equal Opportunity Employment Commission, we should recognize substantial compliance with the statutory scheme and allow the court of common pleas to take jurisdiction under the circumstances.[6] To support this position, appellant cites

6. Appellant asserts in her brief that the Equal Employment Opportunity Commission found reasonable cause for her complaint and gave notice of its failure to conciliate. Although we find no support for this assertion in the record, we will for the purposes of this decision accept its accuracy since we conclude that these facts are not determinative of the question.

the language of section 12(a) to the effect, "[t]he provisions of this act shall be construed liberally for the accomplishment of the purposes thereof . . . ." In response we note that this language appeared in the section before there was an exception to the rule of exclusivity. A liberal construction for the accomplishment of the purposes of the act is not synonymous with a relaxation of the rule of exclusivity for the benefit of a complainant. It is clear from the legislation that the General Assembly was of the view that the procedures provided by the act represented the most effective approach to the problem of discrimination. Thus, the language relied upon by appellant cannot properly be construed as authorizing a broad reading of the exception to the rule of exclusivity.

The learned Chancellor wisely perceived appellant's position as an invitation to the courts to "extend legislative social policy" under the "guise of judicial interpretation." If the General Assembly wished to permit the substitution of agencies in its legislative scheme, it could easily have provided for that result. It declined to do so and it is beyond our powers to ignore that judgment absent some showing of a constitutional infringement. Obviously, the rule of exclusivity was of high priority in the legislative scheme; as first promulgated, the act provided for no exception to the rule, after a number of years of experience the General Assembly was willing only to provide two carefully defined situations. This history provides no basis for a judicial finding of an implicit legislative intent to extend the expressly unambiguous perimeters of the terms of the 12(c) exceptions.

Decree affirmed. Costs to be borne by each party.

MANDERINO, J., did not participate in the decision of this case.