Ruth KAMENS and Pearl Shander

v.

SUMMIT STAINLESS, INC., et al.

Civ. A. No. 83–3644.

United States District Court, E.D. Pennsylvania.

March 29, 1984.

---

Carl T. Bogus, Philadelphia, Pa., for plaintiffs.

Stuart W. Miller, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is an action brought against defendant Summit Stainless, Inc. ("Summit") and its parent corporation Sumitomo Corporation of America ("Sumitomo") by two former employees of Summit, Ruth Kamens ("Kamens") and Pearl Shander ("Shander"). Plaintiffs allege the following: 1) they were discharged on account of their age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Count I); 2) they are owed overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (Count II); 3) their termination breached implied covenants of good faith and fair dealing, and an implied covenant that they would be discharged only for good cause (Count III); 4) certain actions taken in connection with their termination, i.e., the release letter defendants sought to have plaintiffs execute, constitut-

ed actionable duress or coercion. (Count IV).

Defendants bring the present motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the following grounds:

1) The Complaint should be dismissed in its entirety as to defendant Sumitomo in that Sumitomo is not an "employer" under the ADEA and FLSA and did not participate in any of the conduct alleged in the Complaint.

2) Count II, asserting claims for unpaid overtime, should be partially dismissed as barred by the statute of limitation applicable to FLSA claims.

3) Count III should be dismissed since the statutory remedy for age discrimination forecloses common law remedies.

4) Count IV should be dismissed against defendants since no cause of action lies under state law for attempted coercion or duress.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must, of course, take all plaintiffs allegations as true and all inferences favorable to the plaintiff will be drawn. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir.1980); *Mortensen v. First Federal Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977).

### FACTS

Plaintiffs, Ruth Kamens and Pearl Shander, were both employed as bookkeepers at Summit. Kamens had been employed by Summit and a predecessor company (Stainless Plates, Inc.) for ten years. Shander had been employed by Summit and a predecessor company (Rising Sun Stainless, Inc.) for nineteen years. At the time of their discharge on December 27, 1982, Kamens was 64 years old and Shander was 63 years old. Plaintiffs allege that they were replaced by three younger employees, ages 25, 36 and 32. The Company informed plaintiffs that their positions had been eliminated as part of a corporate reorganization and that the new positions created as a result thereof required qualifications plain-

tiffs didn't possess. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Memo") Exhibits A and B. At the time they were terminated, defendant sought to have plaintiffs execute a letter release. In consideration of plaintiffs' agreement to waive all claims they might have against defendants, defendants promised to provide letters of recommendation to future potential employers, to maintain health insurance coverage for approximately 18 months, and to pay $6,000 as severance. Defendants also promised not to challenge plaintiffs eligibility for unemployment benefits. *Id.*

## DISCUSSION

### A. Defendant Sumitomo's Motion to Dismiss

The major thrust of defendant Sumitomo's motion to dismiss is that the corporate veil doctrine, as articulated by the Supreme Court in *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925),[1] insulates a parent corporation from liability for action taken by its subsidiary. *See also Indian Coffee Corp. v. Proctor & Gamble Co.*, 482 F.Supp. 1098, 1104 (W.D.Pa.1980); *Scalise v. Beech Aircraft Corporation*, 276 F.Supp. 58, 62 (E.D.Pa.1967).[2] Plaintiffs argue that the under certain conditions, the corporate veil may be pierced and a parent company held liable along with its subsidiary.

A review of the relevant law demonstrates that federal courts have developed three tests for determining whether a parent company is to be considered an "employer" of the employees of its subsidiary corporation within the meaning of the ADEA and FLSA statutes. The "integrated enterprise" test was first developed in labor relations cases and later applied to Title VII and ADEA cases. *See Radio Union v. Broadcast Serv.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam) (labor relations); *Williams v. New Orleans Steamship Association*, 341 F.Supp. 613 (E.D.La.1972) (Title VII); *Linskey v. Heidelberg Eastern, Inc.*, 470 F.Supp. 1181 (E.D.N.Y.1979) (Title VII and ADEA). In applying the test, the court considers (1) the interrelation of operations, (2) common management, (3) common control of labor relations, and (4) common ownership or financial control between the parent and subsidiary corporations. Based upon these factors, the court determines whether, even if the corporations are nominally separate, they comprise an integrated enterprise. *Radio Union, supra* 380 U.S. at 256, 85 S.Ct. at 877. However, no one of the relevant factors is itself controlling. *See Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715, 721 (E.D.N.Y.1978).

Second, a parent company may be liable for ADEA violations if the court finds the subsidiary is the "mere instrumentality" of the parent. *Fanfan v. Berwind Corporation*, 362 F.Supp. 793 (E.D. Pa.1973). Under this test, the parent corporation will be held liable if (1) it controls the subsidiary to such a degree that the subsidiary is its instrumentality, (2) it is perpetuating a wrong, *e.g.*, violating a statute, through its subsidiary, and (3) an unjust loss would result if the parent is allowed to be shielded by its separate corporate existence. *Id.* at 795.

Third, the court may disregard a parent corporation's separate existence when one company is "the alter ego" of the other and such disregard will "prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability of a crime." *Publicker Industries v. Roman Ceramics*, 603 F.2d 1065, 1069 (3d Cir.1979) (quoting *Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968)).

---

1. The issue in *Cannon* was whether a parent corporation was subject to the jurisdiction of the state wherein the subsidiary was located.

2. As in *Cannon*, the issue in both *Indian Coffee Corp.* and *Scalise* was whether the presence of a subsidiary within a particular jurisdiction subjected the parent company, which was not itself present, to personal jurisdiction.

After reviewing all three tests, this Court recently wrote:

> The Court perceives little substantive difference in the tests heretofore discussed. All are different expressions and means of conducting essentially the same inquiry. Under each test, the Court inquires as to the degree of interrelation between the parent corporation and the subsidiary concerning the conduct that is at issue in the litigation. Where the parent and subsidiary have acted jointly or where the subsidiary has acted as an extension of the parent, subject to its knowledge and involvement, the Court may disregard the parent's separate corporate existence.

*Berkowitz v. Allied Stores of Penn-Ohio, Inc.*, 541 F.Supp. 1209, 1215 (E.D.Pa.1982) (Broderick, J.).

■ Having reviewed the relevant law, I am persuaded that however vital *Cannon* may be in the personal jurisdiction context, its applicability has been vitiated in the substantive areas of labor and employment discrimination law. Therefore, Sumitomo cannot, as a matter of law under the authority of *Cannon*, be dismissed from the case under Fed.R.Civ.P. 12(b)(6). The moving papers and other documents attached thereto disclose a dispute of fact as to what extent Sumitomo and Summit interrelated, particularly with regard to the actions of Mr. Takeshi Iguchi, the president of Summit at the time of plaintiff's discharge, and to what extent the composition of Summit's Board of Directors, all of whom are key executives of Sumitomo, represented common management, ownership or control. Since a genuine dispute as to a material fact precludes the Court from converting a Rule 12(b)(6) motion into a motion for summary judgment under Fed.R.Civ.P. 56, *see Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d at 891, defendant Sumitomo's motion to dismiss is denied.

## B. FLSA Claims

■ Defendants are correct that a cause of action arising out of a non-willful violation of FLSA must generally be commenced within two years after the cause of action accrues, and an action arising out of a willful violation must be commenced within three years after it accrues. From this, defendants reason that plaintiffs' claim for unpaid overtime, going back five years, is, as a matter of law, non-compensable. This position, however, does not account for the equitable tolling doctrine which "is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

■ Plaintiffs assert two grounds upon which equitable tolling may be applicable in this case. First, plaintiffs allege affirmative misrepresentations made by defendants to plaintiff Kamens. Complaint ¶ 28; Plaintiffs' Memo, Exhibit C. A misrepresentation, if proven, equitably tolls the statute of limitations even if it was not made negligently or fraudulently. *Ott v. Midland-Ross Corp.*, 600 F.2d 24, 31–32 (6th Cir.1979); Restatement of Torts (Second) § 552C (1977).

■ Secondly, both plaintiffs allege in their affidavits that at no time during the course of their employment did they see a United States Department of Labor poster advising them of their minimum wage and overtime pay rights. All employers are required to display this poster, pursuant to 29 C.F.R. § 516.4. An employer's failure to post a statutorily required notice of this type tolls the running of any period of limitations. *Bonham v. Dresser Industries*, 569 F.2d 187, 193, (3d Cir.1978). Plaintiffs' allegations as to grounds to invoke equitable tolling are sufficient to avoid partial dismissal of the FLSA claim for unpaid overtime.

## C. Breach of Implied Covenants

■ Count III of the Complaint alleges that "employment contracts between plaintiffs and defendants included an implied covenant of good faith and fair dealing and an implied covenant that plaintiffs

would be discharged only for good cause." Complaint ¶ 32.[3]

 Plaintiffs' common law claim is governed by a line of Pennsylvania and Third Circuit cases beginning with *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) which held that "a cause of action exists for wrongful discharge where the employment termination contravenes a significant and recognized public policy." *Novosel v. Nationwide Insurance Company*, 721 F.2d 894, 898 (3d Cir.1983) (construing *Geary, supra*).

The next major case to consider the ramifications of *Geary* was *Bonham v. Dresser Industries, Inc., supra.* The *Bonham* Court concluded that "the Pennsylvania courts would not hold that termination of an at-will employee on the basis of age gives rise to an independent common law cause of action for breach of contract...." *Id.* at 195. The rationale for this holding was that the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.S.A. § 951 *et seq.*, prohibiting discrimination in employment because of age and establishing a State authority to grant or seek relief from such discriminatory practice, constituted the exclusive state remedy for such discrimination. *Bonham, supra* at 195. The Court stated,

> We do not believe that the courts of Pennsylvania would hold that the mere passage of the Human Relations Act created a separate common law claim where none had existed before, and where that void had been filled by that very legislation. Judicial reluctance to create such a remedy is evident in *Geary,* and we believe that the courts of Pennsylvania, if directly confronted with the issue, would hold that the Pennsylvania Human Relations Act and the procedure established

therein provide the exclusive state remedy for vindication of the right to be free from discrimination based on age.

*Id.* (footnote omitted).

The plaintiffs argue that since *Bonham* a "virtual revolution" in the area of wrongful discharge has occurred, rendering *Bonham* obsolete. Plaintiffs' Memo at 18. I disagree. No case has been cited which indicates any disapproval of *Bonham.* Indeed, in *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982) the Court reaffirmed the validity of *Bonham,* in light of an intervening decision of the Pennsylvania Supreme Court, *Fye v. Central Transp., Inc.,* 487 Pa. 137, 409 A.2d 2 (1979). *Fye* held that the PHRA was not the exclusive remedy available to aggrieved employees. Rather, they could opt for relief under the PHRA or "seek redress by other remedies that might be available." *Id.* at 141, 409 A.2d at 4. The plaintiff in *Bruffett* argued that *Fye* gave him the option of suing under a common law cause of action. The Court in *Bruffett* specifically rejected plaintiff's contention, stating that the optional remedies contemplated by *Fye* were purely statutory. The Court reasoned that 1) the holding in *Geary* signaled a narrow rather than expansive interpretation of the public policy exception; 2) a common law cause of action would give claimants an opportunity to circumvent the carefully drafted legislative procedures contained in the PHRA, which had heretofore been strictly construed by Pennsylvania courts; and 3) the only Pennsylvania cases applying the public policy exceptions had done so where no statutory remedy existed. *Bruffett, supra* at 918–19.

Finally, the Third Circuit's recent decision in *Novosel v. Nationwide Insurance Company,* 721 F.2d 894, is of no aid to plaintiff when it is read in light of prior

---

**3.** In Count IV of the Complaint, plaintiffs allege that "defendants' actions, as described in this and prior counts, violate public policy and are tortious." Complaint at ¶ 37. From Plaintiffs' Memo it appears that plaintiffs intend this allegation, taken in conjunction with the breach of implied covenants claim in Count III, to constitute a claim for tortious wrongful discharge. Despite the liberal pleading standards contem-

plated by Fed.R.Civ.P. 8(f), the Court declines to construe the Complaint as stating a claim under Pennsylvania tort law. While discharge from employment may be couched both in terms of tort and contract, the two causes of action remain separate and distinct, and a claim under one theory will not necessarily imply a claim under the other. *Contra Cancellier v. Federated Depart. Stores,* 672 F.2d 1312 (9th Cir.1982).

cases. *Novosel* stated that the question whether defendant's "custom practice or policy created either a contractual just cause requirement or contractual procedures by which defendant failed to abide" was a question of fact, and as such should survive a motion to dismiss. *Id.* at 902. However, *Novosel* was a case where no federal or state statutory remedy was available. Hence the common law remedy sounding in tort or contract is consistent with both *Bonham* and *Bruffett.* Accordingly, Count III of plaintiffs' Complaint will be dismissed.

### D. Claims for Coercion and Duress

Count IV states that defendants attempted to coerce plaintiffs into signing letter agreements by which plaintiffs would agree to waive certain claims against defendants in exchange for letters of recommendation and other conditions as discussed within at page 3. Defendants argue that in order to state a claim for coercion or duress plaintiff must show "a threat of unlawful conduct that is intended to prevent and does prevent another from exercising free will and judgment in his conduct." Restatement (Second of Torts), § 871. Plaintiff does not refute this legal argument, but rather argues that the attempt to induce plaintiffs to sign the release letters is "evidence that defendants acted with guilty knowledge". Plaintiffs' Memo at 27. In addition, plaintiff asserts such actions implicate important public policy ramifications and societal interests in promoting the reemployment of individuals, such that the actors should be liable for punitive damages, *id.,* presumably because such conduct is wilful, wanton or outrageous. Notwithstanding plaintiffs' spirited attack upon defendants' conduct, it is not actionable under the laws of Pennsylvania. Even if inducing plaintiffs to sign the release letters was wrongful, which is highly doubtful, since plaintiffs did not sign, no harm has occurred. Therefore, Count IV of the Complaint will be dismissed.