## Young v. Y & S Candies

*D. Patrick Zimmerman*, for plaintiff.
*J. Thomas Menaker*, for defendant.

ECKMAN, *P.J.*, March 3, 1987 — Presently before the court are the preliminary objections in the nature of a petition raising a question of jurisdiction and a demurrer filed by defendant, Y & S Candies Inc., to the complaint filed by plaintiff, Linda Young.

On April 21, 1986, plaintiff filed a complaint consisting of one count against Y & S and one count against Maximino Rodriquez. The count against Rodriquez seeks compensatory and punitive damages caused by Rodriquez's alleged indecent assault of plaintiff during the course of their work shift at the Y & S business premises, as well as alleged actions by Rodriquez committed in retaliation for plaintiff's reporting the indecent assault to their work superiors. Rodriquez failed to file a responsive pleading. A default judgment was entered in plaintiff's favor against Rodriquez on June 5, 1986.

The count against Y & S seeks compensatory damages for emotional and mental distress and for

116

punitive damages caused by Y & S's alleged failure to take steps to insure that Rodriquez would not harass plaintiff and by its insistence that plaintiff either work closely with Rodriquez or lose her job. Y & S filed the instant preliminary objections and briefs having been submitted by the parties, the preliminary objections are ready for disposition.

Y & S's petition raising a question of jurisdiction, which also states alternatively that it is one of the bases for its demurrer, contends that the conduct of which plaintiff complains states a claim under the provisions of the Pennsylvania Human Relations Act[1] and that PHRA requires the exhaustion of administrative remedies before the Pennsylvania Human Relations Commission as a jurisdictional prerequisite to the filing of a suit in a court of common pleas.

The parties are in apparent agreement that an employer's policy or lack thereof regarding the protection of female employees against sexual harassment is within the purview of the broad definition of discriminatory conduct prescribed by PHRA. Section 5 of PHRA[2] states, inter alia:

"It shall be unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the commonwealth of Pennsylvania:

---

1. Pennsylvania Human Relations Act, act of October 27, 1955, P.L. 744, as amended; 43 P.S. §951, et seq.

2. PHRA, supra, as amended, 43 P.S. §955, supplement.

"(a) For any employer because of the race, color, religious creed ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required. . . ."

We agree that plaintiff, if she so chose when the problem with Rodriquez still existed,[3] could have resorted to the procedures under PHRA to seek redress for her employer's alleged failure to maintain a workplace free from sexual harassment of female employees by male co-workers. See *Wolk v. Saks Fifth Avenue Inc.*, 728 F.2d 221, 223, n. 2 (3d Cir., 1984).

The interplay between the procedures under PHRA and the filing of actions before the courts of the commonwealth is addressed at section 962 (b) and (c)[4] of PHRA, which sets forth the following in pertinent part:

"Construction and exclusiveness of remedy

. . .

"(b) . . . [A]s to acts declared unlawful by section five of this act the procedure herein provided shall,

---

3. Plaintiff eventually reached an agreement with Y & S, whereby she was transferred to a comparable position in another department, ostensibly where she did not have to work with Rodriquez.

4. PHRA, supra, as amended, 43 P.S. §962 (b) and (c), supplement.

*when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned.* If such complainant institutes any action based on such grievance without resorting to the procedure provided in this act, he may not subsequently resort to the procedure herein. . . .

"(c) In cases involving a claim of discrimination, *if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the commonwealth shall not be foreclosed. If within one (1) year after the filing of a complaint with the [Pennsylvania Human Relations] Commission; the commission dimisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the commonwealth based on the right to freedom from discrimination granted by this act.* If the court finds that the respondent has engaged in or is engaging in an unlawful discriminatory practice charged in the complaint, the court shall enjoin the respondent from engaging in such unlawful discriminatory practice and order affirmative action which may include, but is not limited to, reinstatement or hiring of employees, granting of back pay, or any other legal or equitable relief as the court deems appropriate. . . ." (emphasis added).

A reading of the foregoing provisions of PHRA discloses that its terms are explicitly directed to only three possible procedural scenarios. None of these possibilities reflects the facts of this case as disclosed by the allegations of the complaint, the preliminary objections, and the supplementary comments of the parties in their respective supporting

briefs. Those three possible procedural scenarios as gleaned from the above quoted provisions of PHRA can be paraphrased as follows:

(1) When the complainant invokes the procedures of PHRA, the procedures of that act shall be exclusive and the final determination therein shall exclude any other criminal or civil action based upon the same grievance.

(2) If a complainant institutes any action outside the procedures of PHRA, the complainant may not subsequently resort to the procedures of PHRA to seek redress for the same grievance.

(3) If a complainant invokes the procedures of PHRA and, if within one year following the filing of a complaint with the Human Relations Commission the commission dismisses the complaint or fails to enter into a conciliation agreement, the complainant may bring an appropriate action before the courts of common pleas of the commonwealth.

Instantly, we must assume that plaintiff never instituted any action before the Human Relations Commission seeking redress for the alleged actions of Y & S. As stated, the terms of PHRA do not explicitly address such a situation. The Pennsylvania Supreme Court, however, has indicated, albeit in dicta, that a complainant in some instances may have the initial right of action before the courts of common pleas. In *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), the complainant initially filed a complaint with the Human Relations Commission, which was subsequently terminated at her request. The complainant then filed an action before the Cambria County Common Pleas Court. The Supreme Court affirmed the decision of the chancellor below dismissing the complaint, and,

in so ruling, relied on the exclusivity provision of PHRA set forth in 43 P.S. 962, supra, stating:

"... but as to acts declared unlawful by section 5 of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. . . ." Id., 487 Pa. at 140.

The Supreme Court further indicated that "[t]he Legislature . . . provided an election for the complaining person to opt for relief under the PHRA or the right to seek redress by *other remedies* that may be available." (emphasis added) Id., 487 Pa. at 140, 141.

Pennsylvania appellate courts have not had the opportunity since *Fye* to address the question of what types of remedies might be encompassed within the term "other remedies" as used in that decision. In two subsequent cases before the United States Court of Appeals for the Third Circuit, the court was presented with that very question and focused its analysis on whether the Pennsylvania courts would recognize a common law action outside PHRA for the conduct of the employer. See *Wolk,* supra; *Bruffett v. Warner Communications Inc.,* 692 F.2d 910 (3d Cir., 1982).

On the basis of *Fye,* supra, we find that plaintiff has the arguable right to file an action before the courts of common pleas, and we will dismiss the petition raising a question of jurisdiction. Having so decided, we now will turn to the demurrer and address the question of whether plaintiff has stated a cause of action outside PHRA.

The standard for determining the sufficiency of a demurrer is well established.

"A demurrer admits every well pleaded material fact set forth in the pleadings to which it is addressed. . . . but not conclusions of law. (citations omitted). In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained. . . ." *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691 (1976).

The demurrer should be granted only when it "appear[s] with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff." *Schott v. Westinghouse Electric Corporation*, 436 Pa. 279, 291, 259 A.2d 443 (1969).

For purposes of the demurrer, the complaint discloses that plaintiff and Rodriquez were co-employees of Y & S. Sometime during the spring of 1985, Rodriquez made remarks to plaintiff of a sexually connotative nature. Plaintiff rejected those overtures, but Rodriquez persisted in his advances, and on one occassion pressed plaintiff against a wall at the workplace, placed his hands on her, and attempted to kiss her. Plaintiff complained of these actions to a superior, who then spoke to both plaintiff and Rodriquez. Plaintiff informed her superior that she no longer wanted to work with Rodriquez. The superior told plaintiff that she would be fired if she refused to work with Rodriquez when scheduled.

For some time following these incidents and conversations, plaintiff was not scheduled to work with Rodriquez. Eventually, plaintiff and Rodriquez were scheduled to work at the same work station, whereupon Rodriquez, ostensibly in retaliation for Plaintiff's having reported his sexual advances to superiors, intentionally misconducted himself in

the performance of his job, resulting in plaintiff's inability to normally perform her job. Plaintiff reported Rodriquez's actions to her superiors. When next called upon to work with Rodriquez, plaintiff again requested her superior to assign her another partner. The superior told her that she should go home if she would not work with Rodriquez. Plaintiff then spoke with the plant manager, who told her that she would be fired if she did not work with Rodriquez.

When plaintiff reported to work the next day, she was informed by her supervisor that she was given a one-day suspension without pay as disciplinary action for her refusal to work with Rodriquez. On the following day, plaintiff spoke with the company's personnel manager, who told her that she still must work with Rodriquez. The personnel manager initially announced that plaintiff was being suspended until the facts of the case could be reviewed, but then revoked that suspension after realizing that the plant would be closed the following week. Thereafter, plaintiff, with the assistance of her attorney, was successful in reaching an agreement with the management of Y & S that she would be transferred to a comparable job in another department on the same shift, ostensibly where she would not be called upon to work with Rodriquez.

Plaintiff claims that Y & S had a duty to maintain a safe working environment for its employees and one that was free from sexual harassment committed by co-employees. In violation of that duty, Y & S failed to protect her from harassment committed by Rodriquez and forced her to work with Rodriquez under the threat of losing her job, all of which

caused her to suffer severe emotional and mental distress.

Although plaintiff sets forth only one count against Y & S, we will broadly read the complaint as asserting two separate causes of action against Y & S, one based upon a breach of an employer's duty to maintain an environment in which female employees are protected against sexual harassment from co-employees and another based upon intentional infliction of emotional distress.

We note initially that our appellate courts have yet to recognize a common law cause of action which assigns a specific duty on the part of employers to maintain a work environment free from sexual harassment engaged in either by co-employees, as in the instant action, or by supervisors. See *Wolk,* supra.

Lacking any guidance from existing decisions of our appellate courts, we feel constrained to forego the creation of a new cause of action independent of the remedies provided by PHRA.[5]

---

5. In so ruling, we are not unaware that at present, the Human Relations Commission lacks authority to award damages for emotional and mental anguish. See *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978) (Opinion by Larsen, *J.,* with one justice concurring on different grounds, two justices concurring in result, and two justices dissenting). We recognize also that in view of that lack of authority, the somewhat anomalous situation arises where a complainant who essentially loses before the Human Relations Commission can file an action in courts of common pleas and therein claim damages for emotional and mental anguish, Id., 478 Pa. at 459, but the complainant who essentially wins before the commission can never be awarded such damages. Plaintiff alludes briefly to that situation in her

Having so concluded, we turn then to the issue of whether the complaint states a cause of action for intentional infliction of emotional distress.

Pennsylvania courts have recognized a cause of action for intentional infliction of emotional distress where the plaintiff alleges: (1) extreme and outrageous conduct on the part of defendant, (2) which was intentionally or recklessly inflicted upon the plaintiff, and (3) caused the plaintiff to suffer severe emotional distress. *Jones v. Nissenbaum, Rudolph and Seidner,* 244 Pa. Super. 337, 368 A.2d 770 (1976), allocatur refused; *Ebersole v. Hess,* 67 Lanc. L. Rev. 101 (1980); Restatement (Second) of Torts, 46 at 71 and 72 (1965). The gravamen of this tort is that the conduct complained of must be extreme and outrageous. *Jones,* supra.

"It is for the court to determine, in the first instance, whether [d]efendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Where reasonable men may differ it is for the jury to determine whether the conduct was sufficiently extreme and outrageous as to result in liability." *Ebersole,* supra, at 103, citing Restatement (Second) of Torts, 46, comment (h) at p. 77.

It is not enough that defendant acted with a tortious intent, or with an intent to inflict emotional distress. Rather, the conduct must be ". . . so outra-

brief. The court, nevertheless, is restricted in ruling on the present demurrer to an analysis of whether there is an existing common law cause of action in Pennsylvania which recognizes a duty on the part of an employer to maintain a workplace for employees free from sexual harassment by co-employees.

geous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, 46, comment (d) at 73. See also, *Ebersole,* supra.

A review of the amended complaint discloses that plaintiff complained to her supervisors of only one incident of sexual harassment and one incident whereby Rodriquez retaliated against her for reporting the sexual harassment. The amended complaint also discloses that the management of Y & S initially threatened to fire plaintiff if she did not work with Rodriquez but then transferred her to another department on the same work shift, where she was not required to work with Rodriquez. Between the time of plaintiff's reporting the incident of sexual harassment to her superiors and her reassignment to another department, plaintiff's superiors required her to work with Rodriquez on only two occasions.

We believe that the facts as alleged in the complaint do not support a conclusion that the conduct on the part of Y & S "may reasonably be regarded as so extreme and outrageous as to permit recovery." *Ebersole,* supra. Hence, we find that plaintiff's complaint does not set forth a cause of action for intentional infliction of emotional distress.

Accordingly, we enter the following

### ORDER

And now, March 3, 1987, the preliminary objections of defendant Y & S Candies Inc., to the complaint of plaintiff, Linda Young, are hereby disposed of as follows:

(1) The petition raising a question of jurisdiction with respect to count II of the complaint is hereby dismissed.

(2) The demurrer to count II of the complaint is hereby sustained.

Plaintiff is granted 20 days from the date of this order to file an amended complaint, if she so desires.