# Strayer v. Petry

*Mary A. Etter,* for plaintiff.

*Craig J. Staudenmaier,* for defendants.

HESS, *J.,* March 24, 1989 — This action has been brough by R. Keith Strayer, plaintiff, and arises out of the termination of his employment with West Shore Tire & Supply, defendant. Robert Petry, Gloria Petry and William Petry are named as individual defendants as well as owners of West Shore Tire Supply, also known as Petry's Auto Parts. Plaintiff claims that his employment was terminated because of the mild form of cerebral palsy from which he suffers. On or about February 25, 1986, approx-

imately one month after plaintiff claims that he was improperly let go, he filed a complaint before the Pennsylvania Human Relations Commission alleging discrimination based on a handicap. Defendants answered this complaint, denying all allegations of discrimination. More than one year passed without resolution of plaintiff's claim before the commission and this suit was therefore instituted on or about June 15, 1987. This was done in accord with 43 Pa.C.S. §962(c), a provision of the Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq., which permits an aggrieved plaintiff to seek a remedy in court where the Human Relations Commission has not otherwise resolved the matter within one year of the date of the filing of the complaint.

The instant action asserts various unlawful discriminatory practices as enumerated in 43 P.S. §955. Having now chosen to bring this matter before the court of common pleas, plaintiff may now no longer pursue any administrative remedy and our jurisdiction over this claim is exlusive. *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979). In addition to the statutory claims, plaintiff alleges other causes of action against defendants for breach of contract, wrongful discharge, emotional distress and also includes claims for punitive damages and attorney's fees.

Defendants have raised preliminary objections in the nature of a motion to strike and a demurrer. Defendants' motion to strike is based on a claim that certain references to insurance, made by plaintiff in his complaint, are highly prejudicial and impertinent. According to the complaint, plaintiff was first told that he would be terminated out of a fear that defendants' insurance premiums would be increased. To this extent, plaintiff is correct that all

references to insurance are integral to his case and relate to facts, surrounding his firing, which must be addressed by both parties. Accordingly, we will not grant the motion to strike reference to insurance.

Plaintiff's complaint alleges discrimination as statutorily defined in 43 Pa.C.S. §955. Defendants do not preliminarily object to these allegations. In addition, however, the complaint contains counts in tort and breach of contract. Defendants contend that Strayer, having previously invoked the provisions of the Pennsylvania Human Relations Act, is now barred from asserting contract or tort claims which arise out of alleged handicapped discrimination. In this regard, defendants cite 43 P.S. §962:

"§962. Construction and Exclusiveness of Remedy —

"(a) . . .

"(b) [B]ut as to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action civil or criminal, based on the same grievance of the complainant concerned. If the complainant institutes any action based on such grievance without resorting to the procedure provided in this act, such complainant may not subsequently resort to the procedure herein . . . "

This subsection must be read, however, in conjunction with the subsection which follows:

"(c) In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, the individual's right of action in the courts of the commonwealth shall not be foreclosed. If within one year after the filing of a complaint with the commission, the commission dismisses the complaint or has not entered into a conciliation agree-

ment to which the complainant is a party, the commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring the action in the courts of common pleas of the commonwealth based on the right to freedom from discrimination granted by this act. . . . "

Reading the two foregoing subsections of the statute together, we disagree with defendants' assertion that plaintiff is foreclosed from bringing additional causes of action in this court by virtue of his having filed a complaint before the Human Relations Commission where the commission did not act within one year of the filing. In *Clay v. Advance Computer Applications Inc.*, 370 Pa. Super. 497, 536 A.2d 1375 (1988), allocatur granted 518 Pa. 647, 544 A.2d 959 (1988), the court interpreted 43 Pa.C.S. §962 as follows:

"Subsection (b) of this provision plainly affords the aggrieved party an election of remedies. The party can opt either to pursue relief under the Human Relations Act or to pursue whatever avenues are available, including 'civil' actions. See *Fye v. Central Transportation Inc.*, 487 Pa. 137, 409 A.2d 2 (1979); *Daly v. School District of Darby Twp.*, 434 Pa. 286, 252 A.2d 638 (1969). Once the party elects his or her remedy, the chosen path becomes exclusive. See *Fye, supra.* The General Assembly did not intend to bar judicial remedies for discrimination in the workplace. It sought rather to address 'the undesirability of allowing the person aggrieved to commence several different actions for relief.' *Fye, supra,* 487 Pa. at 140, 409 A.2d at 4. (footnote omitted) Section 962 therefore prevented the Clays from pursuing both an administrative and a judicial remedy in the present case. It did not,

however foreclose their right to choose at the outset between the courts or the Human Relations Commission.

"Morever, subsection (c) which the General Assembly added to section 962 in 1974, expands the rights afforded by subsection (b). It allows the alleged victim of discrimination to seek judicial relief even though he or she has elected to invoke his or her administrative remedies. If the aggrieved party has not obtained relief from the Human Relations Commission within one year, he or she can then pursue an action, 'in the courts of the commonwealth.' See *Baker v. Human Relations Commission,* 507 Pa. 325, 489 A.2d 1354 (1985)." *Clay v. Advanced Computer Applications, supra* at 506-7, 536 A.2d at 1380.

Although the plaintiff in *Clay, supra,* did not seek an administrative remedy, as Mr. Strayer did in this case, the thrust of the *Clay* case is that, once the one-year time period has elapsed, the plaintiff may bring an action in the court of common pleas. We know of no authority for the proposition that in such a subsequently brought court case, the plaintiff would be limited to statutory violations of discrimination asserted in the earlier complaint before the Human Relations Commission. To thus limit the cause of action brought in court would be plainly illogical and run contrary to the clear legislative intent of the act which is to encourage the resolution of such disputes before the Human Relations Commission. Insofar as the plaintiff would have been able to bring all viable causes of action before this court, had he not chosen to proceed before the commission, to penalize him now would have the effect of deterring everyone from first bringing such cases before the commission. The statute and the administrative procedure

therein established was designed to address "the undesirability of allowing the person aggrieved to commence several different actions for relief." *Fye v. Central Transportation Inc., supra* at 140, 409 A.2d at 4. Rather than thwart this legislative purpose, Mr. Strayer waited for the resolution of his case before the Human Relations Commission. The commission however, failed to act. To now deny the plaintiff full redress of grievances has support in neither law nor logic.

Defendants, acknowledging the possibility that we would permit plaintiff's breach of contract and tort claims to otherwise stand, have also filed preliminary objections as to the viability of these counts, individually. Before us, therefore, are demurrers to plaintiff's actions for wrongful discharge, emotional distress and breach of contract. Defendants likewise demur to plaintiff's demand for punitive damages and counsel fees. We deal with these matters seriatim.

The standards for review of a preliminary objection in the nature of a demurrer are well established. "A demurrer, of course, is an assertion that the complaint does not set forth a cause of action upon which relief can be granted. It admits, for the purpose of testing the sufficiency of the complaint, all properly pleaded facts, . . . " *Balsbaugh et al. v. Rowland,* 447 Pa. 423, 426, 290 A.2d 85, 87 (1972). While each cause of action pleaded by Mr. Strayer must include all necessary facts, we treat those facts, thus pled, as true.

Defendants first contend that an action for wrongful discharge, based on handicap discrimination, is not recognized in Pennsylvania. Upon the authority of *Householder v. Kensington Mfg. Co.,* 360 Pa. Super. 290, 520 A.2d 461 (1987), we agree. Although *Householder* was overruled by *Clay, supra,*

the *Clay* court overruled *Householder* only in part, specifically abrogating the requirement that an aggrieved plaintiff must pursue his administrative remedy before resorting to a civil action. The *Clay* court, in a footnote, was careful to preserve the *Householder* holding that handicap discrimination does not give rise to a cause of action for wrongful discharge. The *Householder* court, citing the general proposition that there is no common-law cause of action against an employer for termination of an at-will employment relationship, also noted that the Pennsylvania Supreme Court has created an exception to this general principle where the discharge of the at-will employee poses a threat to public policy. *Householder, supra* at 295, 520 A.2d at 464, citing *Geary v. U.S. Steel Corporation,* 456 Pa. 171, 319 A.2d 174 (1974). The court then went on to indicate that:

"This court has in only two instances found public policy considerations sufficent to support a cause of action for wrongful discharge, namely: *Hunter v. Port Authority of Allegheny County,* 277 Pa. Super. 4, 419 A.2d 631 (1980) (as a result of the public policy against unnecessarily stigmatizing former offenders, a public employer could not deny a former offender employment on the basis of a prior conviction for which the offender had been pardoned, unless the conviction was reasonably related to fitness to perform the job sought); and *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978) (due to the importance of trial by jury in our legal system, an employer could not discharge an employee because the employee accepted service on a jury.)

"In contrast to these two cases, this court in *Tourville v. Inter-Ocean Insurance Co.,* 353 Pa. Super. 53, 508 A.2d 1263 (1986), held that the

discharge of an employee hospitalized for illness did not violate public policy. Nor was a public policy consideration sufficient to support a *non-statutory*, common-law cause of action for wrongful discharge where: (1) an employee was discharged in retaliation for placing an advertisement with a competing paper, *Martin v. Capital Cities Media Inc.*, 354 Pa. Super. 199, 511 A.2d 830 (1986); (2) an employee was discharged as a result of an accusation of criminal behavior, *Gillespie v. St. Joseph's University*, 355 Pa. Super. 362, 513 A.2d 471 (1986); (3) an employee of a nursing home was discharged because she applied to the state for a license to run a competing facility, *McCartney v. Meadowview Manor Inc.*, 353 Pa. Super. 34, 508 A.2d 1254 (1986); (4) an employee was discharged for attempting to curtail the misuse of public tax revenues, *Rossi v. The Pennsylvania State University*, 340 Pa. Super. 39, 489 A.2d 828 (1985); (5) an employee was discharged after being wrongly accused and subsquently acquitted of criminal conduct in connection with his employment, *Cisco v. United Parcel Service Inc.*, 328 Pa. Super. 300, 476 A.2d 1340 (1984)." *Householder v. Kensington Manufacturing Co., supra* at 296-7, 520 A.2d at 465. (footnote omitted)

Thus, we sustain defendants' preliminary objections to plaintiff's non-statutory causes of action in wrongful discharge.

We now turn to plaintiff's claims for emotional distress. Specifically, as to Robert and William Petry, plaintiff has alleged causes of action for intentional infliction of emotional distress and for the negligent infliction of same. The current law with respect to the intentional infliction of emotional distress is set forth in section 46(1) of the Restatement (Second) of Torts as follows:

"§46. Outrageous Conduct Causing Severe Emotional Distress —

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The case of *Kazatsky v. King David Memorial Park Inc.*, 515 Pa. 183, 527 A.2d 988 (1987) deals with the application of this Restatement section to Pennsylvania law. In dismissing a claim where there was no proof of actual emotional distress, Chief Justice Nix concluded "that if section 46 of the Restatement is to be accepted in this commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Memorial Park Inc., supra* at 197, 527 A.2d at 995. Of seven Supreme Court Justices, only Justice Larson and Papadakos would incorporate the tort of intentional infliction of mental distress into the law of Pennsylvania. In contrast, Mr. Justice Hutchinson, writing for himself, said in *Kazatsky:*

"I concur in the result. I do not believe the new intentional tort proposed by section 46 of Restatement (Second) of Torts, with its undefinded parameters, has any place in either Pennsylvania precedent or policy." *Id.* at 200-1, 527 A.2d at 996.

Taken as a whole, the *Kazatsky* case has been interpreted as making clear "that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania." *Ford v. Isdaner,* 374 Pa. Super. 40, 43, 542 A.2d 137, 139 (1988). The *Ford* case, *supra* goes on to indicate that, even if section 46 of the Restatement is part of Pennsylvania law, the plaintiff's complaint did not establish a right of

recovery under the terms of that Restatement provision. We apply the same analyis in this case.

Without finally reaching the question of whether the tort of intentional infliction of emotional distress is or is not recognized in Pennsylvania, it is clear that the complaint in this case fails to set forth allegations that defendants engaged in the extreme and outrageous conduct necessary to support the couse of action under section 46(1) of the Restatement. As noted in comment (d) to section 46, liability "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Even assuming the truth of all the facts in plaintiff's complaint, they do not begin to rise to the level necessary to denominate them "outrageous" within the meaning of the Restatement.

Included in plaintiff's references to emotional distress is a claim with respect to negligent infliction. We agree with defendant that a demurrer must be sustained with respect to these counts. It is clearly Pennsylvania law that liability can only be founded, under this theory, upon one's personal observation of physical injury negligently inflicted by another upon a third person, usually a close relative. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). See also, *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986).

Defendants next contend that plaintiff has failed to set forth sufficient facts to support a claim for breach of contract. Defendants maintain that Strayer was an "at-will" employee involved in a relationship where either the employer of the employee could terminate for no reason. *Rossi v. Pennsylvania State University,* 340 Pa. Super. 39,

489 A.2d. 828 (1985). The burden is on plaintiff to prove that his employment relationship was other than "at will." Such alternative arrangements arise out of contracts which provide, at the very least, that the employee can be fired only for cause. Such a contract need not be in writing and may be implied by the circumstances and actions of the parties. See e.g., *Kistler v. O'Brien*, 464 Pa. 475, 347 A.2d 311 (1975); and *Murphy et al. v. Haws and Burke*, 235 Pa. Super. 484, 344 A.2d 543 (1975). In this case, plaintiff alleges that defendants expressly promised that they would not "arbitrarily and without just and good cause terminate plaintiff's employment before normal retirement." While scant indeed, plaintiff nonetheless pled facts which could give rise to a contract for employment, the breach of which is a proper subject of this suit.

Finally, plaintiff has made claims for punitive damages and counsel fees. With respect to the former, we reiterate that plaintiff has failed to state a cause of action, in tort, independent of the relief afforded by the Human Relations Act. To that extend the court's power to redress unlawful discriminatory practices set forth in 43 P.S. §962(c) wherein the court is granted authority to enjoin unlawful discriminatory practices and to order affirmative action which can include the reinstatement or hiring of employees, the granting of back pay or any other legal or equitable relief as the court deems appropriate. On the other hand, the imposition of punitive damages is nowhere referred to in the act. The only other viable counts in plaintiff's complaint are those in breach of contract. The law is clear, however, that punitive damages are not recoverable

in the context of a contract action. *Thorsen v. Iron and Glass Bank,* 328 Pa. Super. 135, 476 A.2d 918 (1984).

With respect to the final matter, we note that plaintiff's complaint is devoid of any statutory authority for the award of counsel fees. He has attempted to rectify this situation by citing, in his brief, Pennsylvania Judicial Code §2503(7):

"§2503. Right of participants to recieve counsel fees —

"The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

"(7) any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of the matter." 42 Pa.C.S. §2503(7).

This section permits the award of counsel fees where a party has acted in a certain way while the lawsuit was pending. The complaint, however makes no reference to any activities of defendants following the filing of this suit. To the contrary, the allegations of count XIV of plaintiff's complaint have to do with the failure of defendants to provide certain documentation to the hearing officer of the Pennsylvania Human Relations Commission. These materials consisted of certain orders taken by plaintiff and other employees. Another allegation in this count contends that defendants represented themselves as doing business as Petry's Auto Parts rather than West Shore Tire & Supply Co. Finally, count XIV claims that William and Robert Petry did not disclose, until December 15, 1987, that Gloria Petry was a co-owner of Petry Auto Parts and/or West Shore Tire & Supply Co. Even if such conduct were "during the pendency" of this matter, we could hardly agree that it was "dilatory,

obdurate or vexatious." The conduct complained of, however, occurred exclusively before the Human Relations Commission and, therefore raises generally the question of their claim for counsel fees in cases involving discrimination under the Pennsylvania Human Relations Act. In *Consumers Motor Mart v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission*, 108 Pa. Commw. 59, 529 A.2d 571 (1987), the Commonwealth Court considered plaintiff's request for counsel fees which were refused by the Human Relations Commission.

"We now turn to complainant's argument that the commission should have granted her counsel fees. Our review of the act, and specifically of section 9 of the act, 43 P.S. §959(f), reveals that there is no discrete statutory authority for the award of counsel fees by the commission to a successful litigant. We recognize that the commission has very broad discretionary powers to effectuate the policies of the act. *Pennsylvania Human Relations Commission v. Zamantakis*, 478 Pa. 454, 387 A.2d 70 (1978). We, however, are equally aware that 'the commission, like all adminstrative agencies, can only exercise those powers which have been conferred upon it by the legislature.' *Id.* at 457, 387 A.2d at 72. In *City of Pittsburgh Commission on Human Relations v. MacBeth*, 37 Pa. Commw. 636, 391 A.2d 1109 (1978), our Supreme Court rejected a similar request for counsel fees under section 13(i) of the Pittsburgh Human Relations Ordinance which contained language almost identical to that considered here in section 9 of the act, 43 P.S. §959(f). We conclude that the board did not err when it denied complainant's request for counsel fees." *Id.* at 67-8, 529 A.2d at 575-6. (footnote omitted)

Clearly, plaintiff is not entitled to an award of

attorneys' fees, costs and expenses in this proceeding, even if he is successful.

### ORDER

And now, March 24, 1989, defendants' preliminary objection in the nature of a motion to strike is dismissed. Defendants' preliminary objections, in the nature of a demurrer, to plaintiff's counts of wrongful discharge in tort, of intentional infliction of emotional distress, of negligent infliction of emotional distress as well as for punitive damages, counsel fees, costs and expenses are sustained. The remaining preliminary objections of defendant, to plaintiff's fourth amended complaint, are dismissed.