Clair T. UBER, Appellant

v.

**SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA of the State System of Higher Education.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2005.
Decided Nov. 23, 2005.

Neal A. Sanders, Butler, for appellant.

Calvin R. Koons, Sr. Deputy Attorney General, Harrisburg, for appellee, Attorney General of Pennsylvania.

BEFORE: FRIEDMAN, J., and COHN JUBELIRER, J., and SIMPSON, J.

OPINION BY Judge COHN JUBELIRER.

Clair T. Uber (Uber) appeals an Order of the Court of Common Pleas of Butler

County that granted Slippery Rock University of Pennsylvania of the State System of Higher Education's (the University) Motion for Summary Judgment with respect to Uber's age discrimination claim, and the University's Motion for Nonsuit with respect to Uber's retaliation claim for an allegedly unjustifiable low performance evaluation.

In 1981, Uber was hired by the University as a Police Officer (PO) # 1.[1] In either January or February 1998, the University posted a vacancy for a PO # 2 position to which Uber, as well as four other PO # 1's, applied. Uber interviewed for the vacant position but was not selected. Uber alleges that, at 59 years of age, he was the oldest applicant and member of the police force and that a "younger and less qualified" employee was selected for the position. (R. Item 1, Civil Complaint ¶ 13.) On March 26, 1998, upon being notified of the University's decision not to hire him, Uber filed a grievance with the University's Director of Social Equity, Dwight Greer, complaining that he was discriminated against because of his age. Mr. Greer conducted an investigation into the matter and ultimately enlisted the assistance of investigator Mel Gillespie of East Stroudsburg University to determine the merits of the charge. On October 5, 1998, Mr. Gillespie wrote a letter to Mr. Greer, wherein he stated that there was no evidence of age discrimination and that the person selected for the position was over forty years old. (R. Item 37, Uber Ex. 3, attached at 50.)

On May 29, 1999, Uber filed a complaint with the Pennsylvania Human Relations Commission (PHRC) alleging a violation of the Pennsylvania Human Relations Act (PHRA).[2] On December 14, 1999, the PHRC disposed of the case based upon a finding that the evidence was insufficient to establish a violation. Uber claims that the University began a pattern of harassment after he filed the discrimination complaint by: routinely excluding him from discussions, unnecessarily opposing leave and vacation requests, refusing his request for desk duty related to an alleged disability, and issuing him an unfair performance review. As a result of this alleged retaliation on the part of the University, on January 7, 2000, Uber filed a complaint with the Equal Employment Opportunity Commission (EEOC), and cross-filed with the PHRC. This complaint was amended on May 1, 2000. The PHRC closed the investigation on January 12, 2001, after finding no violations.

On January 25, 2001, Uber filed a Civil Complaint with the trial court setting forth two claims: Count I—a claim of age discrimination pursuant to Section 5(a) of the PHRA;[3] and, Count II—a claim of retalia-

---

1. The University's police force has four tiers: 1) PO # 1 is responsible for general police work, such as investigating accidents and directing traffic; 2) PO # 2, lieutenant, supervises a specific shift; 3) PO # 3, captain, is responsible for supervision of the entire department; and, 4) PO # 4 is the Director of University Police. (5/13/04 Trial Ct. Op. at 1, n. 1.)

2. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951—963.

3. Section 5(a) of the PHRA states that it shall be unlawful:

(a) For any employer because of ... age ..., to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required....

43 P.S. § 955(a).

tion pursuant to Section 5(d) of the PHRA.[4] The University filed its Answer and New Matter to which Uber filed a Reply to New Matter. Thereafter, the University filed a Motion for Summary Judgment to which Uber filed his Opposition, and oral argument before the trial court was held on January 23, 2004.

The trial court issued an Order and Opinion granting in part and denying in part the University's Motion for Summary Judgment. (5/13/04 Trial Ct. Op.) Pertinent to the appeal before this Court, the trial court granted the University's Motion for Summary Judgment with regard to Count I—age discrimination. The trial court held that, because Uber was notified on March 26, 1998 that he would not be promoted and did not file his claim with the PHRC until May 29, 1999, he was outside the 180–day time limit for filing a claim and could not seek judicial review.[5] Significantly, the trial court rejected Uber's arguments that the statutory deadline was subject to "equitable tolling" because the University misled him or because he had filed an internal complaint with the University's Director of Social Equity. (5/13/04 Trial Ct. Op. at 4–8.) The trial court noted that Uber received the communication which he claims misled him after the 180–day time limit had run, and there was no authority for the proposition that filing an internal complaint with

an employer tolls the statute of limitations for filing a claim with the PHRC. (5/13/04 Trial Ct. Op. at 5–8.)

The trial court also granted summary judgment with respect to several aspects of Uber's Count II, which relates to his retaliation claims. However, pertinent to the appeal before us, the trial court denied the motion with respect to the *single claim* that Uber was given a poor performance evaluation in 1999 in retaliation for his complaints.[6] Therefore, a non-jury trial was held on *that single issue* and, at the conclusion of Uber's case, the trial court granted the University's Motion for Nonsuit. In an order dated January 19, 2005, the trial court held that Uber failed to meet his burden of establishing that the University took an adverse employment action against him and dismissed the case. (1/10/05 Trial Ct. Order.) Uber now appeals to this Court.

On appeal, Uber argues that the trial court erred by granting: 1) the University partial summary judgment on the claim of age discrimination; and 2) the University's Motion for Nonsuit after he rested in the January 2005 non-jury trial.

■ This Court's review of a trial court's grant of summary judgment and nonsuit is limited to determining whether the trial court abused its discretion or

---

4. Section 5(d) of the PHRA states that it shall be unlawful:

 (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act. 43 P.S. § 955(d).

5. Section 9(h) of the PHRA states that "[a]ny complaint filed pursuant to this section must be so filed within one hundred eighty days

after the alleged act of discrimination, unless otherwise required by the Fair Housing Act." 43 P.S. § 959(h). Here, Uber was on notice of the alleged discrimination on March 26, 1998; thus, his limitations time for filing his claim ran on September 22, 1998.

6. We note that the trial court found the evidence was insufficient to establish an ongoing pattern of hostile conduct and, therefore, the court viewed each alleged act of retaliation as a discrete incident, subject to the PHRA's 180–day limitations period. (5/13/04 Trial Ct. Op. at 16–17.)

committed an error of law. *D.C. v. Sch. Dist. of Philadelphia,* 879 A.2d 408, 413 n. 3 (Pa.Cmwlth.2005); *Gramlich v. Lower Southampton Twp.,* 838 A.2d 843, 845 (Pa. Cmwlth.2003), *pet. for allowance of appeal denied,* 578 Pa. 696, 851 A.2d 143 (2004). Summary judgment is proper only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law. *Kincel v. Dep't of Transp.,* 867 A.2d 758, 761 n. 7 (Pa.Cmwlth.2005). Likewise, "[a] nonsuit should be entered only in a clear case, and, on appeal from the refusal to take off a compulsory nonsuit, the plaintiff must be given the benefit of all favorable testimony and every reasonable inference of fact arising therefrom and all conflicts therein must be resolved in favor of plaintiff." *Rutter v. Northeastern Beaver County Sch. Dist.,* 496 Pa. 590, 595–96, 437 A.2d 1198, 1200 (1981)(quoting *Cushey v. Plunkard,* 413 Pa. 116, 117, 196 A.2d 295, 296 (1964)).

■ Uber first argues that the trial court erred in granting the University a partial summary judgment on the claim of age discrimination because his time deadline of 180 days should have been extended under the theory of equitable tolling. In general, any complaint filed pursuant to the PHRA must be filed within 180 days after the alleged discrimination. 43 P.S. 959(h). Here, Uber was notified of the alleged discrimination on March 26, 1998; thus, the 180 days expired on September 22, 1998. However, he did not file a claim with the PHRC until May 29, 1999. There is no dispute that Uber was late in filing his age discrimination claim. However, under the principals of "equitable tolling," a claim filed beyond the 180–day time limit may be permitted where the defendant

actively misleads the plaintiff regarding the cause of action; where extraordinary circumstances prevent the plaintiff from asserting his rights; and where a plaintiff has asserted his rights in a timely fashion, but in the wrong forum. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3rd Cir.1994).

■ Uber contends that he was actively misled by the University in the October 5, 1998 letter from Mr. Gillespie that stated that his age discrimination claim was without merit because the employee that was hired was also over the age of forty years old. Uber argues, relying on the holding in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996),[7] that this is a complete misstatement of the law, and that the University actively misled him concerning the legal merits of his case. However, as the University correctly points out, the October 5, 1998 letter from Mr. Gillespie, which Uber claims misled him, was not sent until **after** the 180–day limitation period had already run and, thus, could not have misled him. Therefore, this argument lacks merit.

Alternatively, Uber argues that he asserted his rights in a timely fashion, but in the wrong forum. He contends that he filed a complaint alleging age discrimination with Mr. Greer, Director of the University's Department of Social Equity, on March 26, 1998, which is well within the 180–day time limitation. He argues that he filed his complaint of age discrimination with the "wrong state organization" and, therefore, the doctrine of equitable tolling should apply.

The University contends that Pennsylvania courts have been strict in requiring

---

7. *O'Connor* held that the fact that an Age Discrimination in Employment Act plaintiff was replaced by someone outside the protected class is not a proper element of a *prima facie* case. *Id.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433.

parties claiming discrimination to file a timely complaint with the PHRC or thereafter be barred from seeking judicial review of the claims. *See Vincent v. Fuller Co.*, 532 Pa. 547, 556, 616 A.2d 969, 974 (1992); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3rd Cir.1997), *cert. denied*, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997). Relying on *Fye v. Central Transp., Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), the University asserts that courts have respected the exclusive procedure the legislature has set up for resolving disputes and providing remedies for alleged violations of the PHRA. Thus, it argues that an employer's internal administrative proceeding is not sufficient to toll the statute of limitations for filing a PHRA complaint because it is not a means for filing a formal PHRA claim with the PHRC.

In *Fye*, the Supreme Court held that the election by a former employee to seek redress under the PHRA divested the court's jurisdiction in equity to entertain the complaint subsequently filed on a claim of unlawful discrimination based on sex, even though the former employee's file with the PHRC had been closed at her request. The plaintiff voluntarily terminated administrative proceedings in the PHRC in favor of proceeding in the Equal Opportunity Employment Commission. She then attempted to sue in court under the PHRA. The trial court dismissed the complaint and the Supreme Court affirmed. The Supreme Court stated that the "PHRA provides that when the statutory procedure is invoked it is exclusive" and then declined to accept the plaintiff's argument that the court should find substantial compliance with the PHRA, because "the role of the agency was carried out, albeit not by the designated agency but by the Equal Opportunity Employment Commission...." *Fye*, 487 Pa. at 141–42, 409 A.2d at 4–5. The Supreme Court stated that "[i]f the General Assem-

bly wished to permit the substitution of agencies in its legislative scheme, it could easily have provided for that result." *Id.*, 487 Pa. at 142, 409 A.2d at 5.

■ In the case *sub judice*, Uber filed an internal grievance with the University's Department of Social Equity and did not timely file a claim under the PHRA with the PHRC. Absent any legal authority, this Court cannot find that the legislature intended that filing an internal complaint with an employer is a substitute for filing with the PHRC. Therefore, we affirm the trial court in granting partial summary judgment and conclude that equitable tolling is not appropriate.

■ Next, Uber argues that the trial court erred in granting the University's Motion for Nonsuit after he rested in the January 2005 non-jury trial. In order to prove a *prima facie* case of retaliation, a complainant must show that: 1) he was engaged in a protected activity; 2) his employer was aware of the protected activity; 3) subsequent to participation in the protected activity, *he was subjected to an adverse employment action;* and, 4) there is a causal connection between his participation in the protected activity and the adverse employment action. *Spanish Council of York v. Pa. Human Relations Comm'n*, 879 A.2d 391, 399 (Pa.Cmwlth. 2005). Upon showing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Finally, the burden shifts back to the complainant to show that the employer's proffered reasons are pretextual. *Id.* Here, we note that the trial court dismissed this case upon finding that Uber failed to show an adverse employment action. (1/10/05 Trial Ct. Order.)

 An adverse employment action is an action taken by an employer that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997). In other words, a plaintiff cannot prevail on a retaliation claim unless there is evidence that the challenged action has negatively impacted a present or future employment relationship. *Harley v. McCoach*, 928 F.Supp. 533, 541–42 (E.D.Pa.1996). Upon proving an adverse employment action, causation may be inferred where there is a close temporal relationship between the participation in a protected activity and the occurrence of an adverse employment action. *Robert Wholey Corp., Inc. v. Pa. Human Relations Comm'n*, 146 Pa.Cmwlth. 702, 606 A.2d 982, 983 (1992), *pet. for allowance of appeal denied*, 532 Pa. 659, 615 A.2d 1314 (1992). In the absence of a temporal relationship, causation may be inferred where circumstantial evidence suggests a "pattern of antagonism" following the protected conduct. *Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3rd Cir.1997). However, these factors are not dispositive of causation but, rather, represent relevant inquiries in light of the totality of the circumstances. *Id.*

Uber argues that he has established the existence of an adverse employment action on the part of the University when considering the totality of the circumstances. He contends that the record shows that, during the time period of May 1999 through the latter part of 2000, he was isolated and shunned by his supervisors; important information regarding the performance of his duties was kept from him; on multiple occasions, he was subjected to obstacles in requesting sick leave, vacation time, light-duty work and personal days; and, he was given an unjust performance evaluation for the year 1999. Uber claims that this evaluation gave him three "fair" ratings instead of "good" ratings in the categories of "dependability," "initiative" and "relationship with people." (R. Item 37, Uber Ex. 14d, attached at 50.) After he complained about his dissatisfaction with the evaluation, the University changed one "fair" rating to "good" in the category of "dependability." (R. Item 37, Uber Ex. 14e, attached at 50.) According to Uber, this left two unjust "fair" ratings in the categories of "initiative" and "relationship with people." *Id.* Additionally, he argues that his union representative, Stanley Furman, testified that receiving a rating of "fair" was a matter of concern.

We first note that although Uber refers to a series of events that establish an alleged adverse employment action, the 1999 performance evaluation was the only issue before the trial court and, likewise, the only retaliation issue Uber preserved in his statement of issues on appeal to this Court. Therefore, we only consider whether the 1999 performance evaluation establishes an adverse employment action.

 In reviewing the record as a whole, we find that Uber failed to prove that the 1999 performance evaluation was an adverse employment action. Uber's overall rating in his 1999 evaluation was "good," the same as it was the previous year in an evaluation that satisfied him. (R. Item 36, 1/10/05 Tr. at 157; Item 37, Uber Exs. 14c, 14d, 14e, attached at 50.) The only difference between the 1999 and 1998 evaluations was that, in 1999, he received two marks of "fair" instead of "good" in the categories of "relationship with people" and "initiative." *Id.* Furthermore, Uber testified that the 1999 evaluation did not affect the hours he worked, his duties, his salary, his benefits, or his opportunities for overtime. (R. Item 36, 1/10/05 Tr. at 161–63.) More importantly, Uber conceded that he never

applied for a promotion between 1999 and 2001, the year he retired. *Id.* at 165–66. Thus, Uber presented no evidence to establish that his then-present position and/or any future position was negatively affected. *Harley.* Finally, the 1999 performance evaluation established that Uber did not receive a "poor" evaluation; instead, he received an overall "good" evaluation. Therefore, we affirm the trial court and find that this evidence is insufficient to prove that the performance evaluation was an adverse employment action. As such, we need not reach the issue of causation or the shifting of burdens.

Accordingly, based on the foregoing opinion, we affirm the order of the trial court granting the University's Motions for Summary Judgment and Nonsuit.

## *ORDER*

**NOW,** November 23, 2005, the order of the Court of Common Pleas of Butler County in the above-captioned matter is hereby affirmed.