Bat Conservation and           :
Management, Inc.,            :
             Petitioner      :
                         :
         v.               :
                         :
Unemployment Compensation  :
Board of Review,          :  No. 559 C.D. 2022
             Respondent  :  Argued: June 7, 2023

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                        FILED: September 8, 2023

Bat Conservation and Management, Inc. (Employer) petitions this Court for review of the Unemployment Compensation (UC) Board of Review's (UCBR) May 10, 2022 remand order reversing the Referee's decision and finding Julie Zeyzus (Claimant) eligible for UC benefits under Section 402(e) of the UC Law (Law).[1] Employer presents five issues for this Court's review: (1) whether the UCBR erred by reversing its prior decision and the Referee's decision based upon its creation of a new affirmative defense, retaliation, to a willful misconduct claim, and in depriving Employer of the opportunity to rebut the new defense; (2) whether the UCBR erred by concluding that Claimant met her burden of proving the

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to discharge for willful misconduct).

affirmative defense where the UCBR's finding was not supported by substantial evidence; (3) whether the UCBR failed to properly apply the burden-shifting framework applicable to affirmative defenses when it did not consider whether Employer demonstrated that it had a proper reason for discharging Claimant; (4) whether the UCBR erred by applying the improper *necessitous and compelling* standard in reaching its decision; and (5) whether the UCBR's resolution of credibility determinations in Claimant's favor was contrary to the overwhelming evidence demonstrating Employer had a proper reason for discharging Claimant. After review, this Court vacates and remands.

Employer performs scientific surveys related to bats and manufactures equipment. Employer employed Claimant as a wildlife biologist from February 12, 2018 to November 20, 2019. Claimant and Employer's president (President) had been acquainted since 2001. In June of 2017, President and Claimant began a romantic relationship. Claimant ended the relationship on March 23, 2019. President continued to initiate contact with Claimant in the form of attempted flirting and sexual remarks.

For approximately one week in May of 2019, President attempted to make physical advances towards Claimant, including touching, grabbing, and kissing. Claimant rejected President's advances. Because President's conduct persisted despite Claimant rejecting his advances, Claimant retained a lawyer near the end of June 2019. Claimant's counsel and President's counsel engaged in negotiations, as a result of which, President agreed that he would not directly supervise Claimant.

Claimant was primarily responsible for the Little Brown Bat Migration project (Project). As part of the Project's requirements, Employer had to submit data and a written report to the Pennsylvania Game Commission (Commission) that was due within 120 days of completed field surveys. The Commission issued Employer

2

a permit to conduct a field survey from May 15, 2019 through October 31, 2019. Employer's report and data were due to the Commission sometime in February 2020. Claimant was responsible for completing the report with data sheets for the Project.

President reneged on his word to not directly supervise Claimant. President began demanding that Claimant submit her work within deadlines unlike he had previously. President also began treating Claimant differently than other employees - accusing her of doing things that she had not done, restricting her work hours, and eliminating her employment benefits. By October 21, 2019 email, President requested that Claimant submit a capture spreadsheet to him by October 24, 2019. President notified Claimant that he needed the data for archival purposes. Claimant submitted a draft spreadsheet to President, which he claimed was in an improper format and missing necessary components.

On October 24, 2019, Claimant filed a complaint against Employer with the Pennsylvania Human Relations Commission (PHRC). President later informed Claimant via email that the Project report and data had to be completed by November 15, 2019, or she would suffer disciplinary consequences. Claimant emailed President on November 13, 2019, declaring that she felt his actions were in retaliation for the legal action she had taken against him. After Claimant did not submit the Project report to President by the November 15, 2019 deadline, President issued Claimant a final warning and instructed Claimant to provide the report by November 18, 2019, at 3:00 p.m. Claimant timely submitted a draft report, which President considered incomplete. President had also requested, on several occasions, that Claimant return the bat detectors to Employer that Claimant had borrowed for a personal project during the summer of 2019. Claimant did not timely return those devices.

On November 19, 2019, Claimant emailed President that she was stepping down from the Project, and that she would resume the work she had

3

performed prior to the Project. Claimant also warned President not to contact her because he was not her supervisor. President responded to the email on the following day, informing Claimant that her employment was terminated effective immediately because of her refusal to complete her primary job duties. President noted that Claimant's refusal to communicate with him concerning work-related matters constituted insubordination.

Claimant applied for UC benefits. On December 11, 2019, the Indiana UC Service Center determined that Claimant was eligible for UC benefits under Section 402(e) of the Law. Employer appealed, and a Referee held a hearing on February 7, 2020. On March 12, 2020, the Referee reversed the UC Service Center's determination. Claimant appealed to the UCBR. On July 10, 2020, the UCBR affirmed the Referee's decision. On July 27, 2020, Claimant filed a Request for Reconsideration and Submission of New Evidence (Request) with the UCBR. On August 7, 2020, the UCBR denied Claimant's Request. Claimant appealed to this Court. Thereafter, the UCBR requested a remand to further develop the record. By March 18, 2021 Order, this Court granted the UCBR's remand request.[2]

The UCBR appointed a Referee to act as a Hearing Officer and schedule a hearing to allow Claimant to testify regarding her motivation for filing the PHRC complaint and her retaliation claim. *See* Reproduced Record (R.R.) at 302a (Remand Memo). On April 29, 2021, the UCBR remanded the matter to the Hearing Officer to schedule a further hearing and take additional testimony pertinent to the issues involved. The UCBR directed the Hearing Officer to submit a recording of such further testimony to the UCBR at the earliest possible date. On August 13, 2021, the Hearing Officer held a hearing. On May 10, 2022, the UCBR reversed the Referee's decision and found Claimant was not disqualified under Section 402(e) of

---

[2] Neither the UCBR's remand request nor this Court's order are included in the certified record.

4

the Law because she proved that Employer's decision to discharge her was motivated by retaliation for her lodging complaints of sexual harassment against President. Employer appealed to this Court.[3]

Employer first argues that the UCBR erred by reversing its prior decision and the Referee's decision based upon its creation of a new affirmative defense, retaliation, to a willful misconduct claim, and in depriving Employer of the opportunity to rebut the new defense. The UCBR rejoins that it correctly concluded that, despite evidence of willful misconduct, the substantial motivating factor for Claimant's discharge was retaliatory animus for Claimant lodging complaints of sexual harassment against President. The UCBR further retorts that the case law is clear that the UCBR must address retaliation claims. The UCBR maintains that Employer was provided specific notice via the UCBR's Remand Memo that it would be considering Claimant's retaliation claims.

Addressing whether a claimant can be granted UC benefits, despite a finding of willful misconduct, the Pennsylvania Supreme Court has explained:

> Although we look to the reasonable standards of an employer to determine whether an employee has engaged in 'willful misconduct,' we cannot sanction the [UCBR's] acceptance of an employer's standard which expects certain conduct from black employees, but not from white employees. The use of such a standard to determine [UC] benefits constitutes state action based on the racially discriminating policies of an employer. **This is prohibited**.

---

[3] "'Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence.' *Miller v. Unemployment Comp. Bd. of Rev*[.], 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014)." *Talty v. Unemployment Comp. Bd. of Rev.*, 197 A.3d 842, 843 n.4 (Pa. Cmwlth. 2018).

*Woodson v. Unemployment Comp. Bd. of Rev.*, 336 A.2d 867, 869 (Pa. 1975) (emphasis added).

Thereafter, this Court in *Geisinger Health Plan v. Unemployment Compensation Board of Review*, 964 A.2d 970 (Pa. Cmwlth. 2009), expounded:

> **Disparate treatment is an affirmative defense by which a claimant who has engaged in willful misconduct may still receive** [**UC**] **benefits** if [she] can make an initial showing that: (1) the employer discharged claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) **the employer discharged the claimant based upon an improper criterion**. Once the claimant has made this showing, the burden then shifts to the employer to show that it had a proper purpose for discharging the claimant.

*Id*. at 974 (emphasis added; citations omitted).

As the UCBR described, the corollary of *Woodson* and *Geisinger* is that (1) the UCBR must be conscientious of the motivation for an employer's decision to discharge an employee, and (2) claimants have an affirmative defense when the employer's motivation is based on unlawful criterion. Accordingly, precedential case law provides for affirmative defenses, such as retaliation, to willful misconduct claims.

This Court recognizes that Claimant is not alleging *disparate treatment* herein but, rather, *retaliation*; thus, the *Geisinger* factors do not apply. However, regarding retaliation, this Court has held:

> In order to prove a *prima facie* case of retaliation, a complainant must show that: 1) [she] was engaged in a protected activity; 2) [her] employer was aware of the protected activity; 3) subsequent to participation in the protected activity, [*she*] *was subjected to an adverse employment action*; and[] 4) there is a causal connection between [her] participation in the protected activity and the adverse employment action. *Spanish Council of York v. Pa. Hum*[.] *Rel*[*s.*] *Comm'n*, 879 A.2d 391, 399 (Pa.

Cmwlth. 2005).  Upon showing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 . . . (1973)).  Finally, the burden shifts back to the complainant to show that the employer's proffered reasons are pretextual.  *Id.*

*Uber v. Slippery Rock Univ. of Pa.*, 887 A.2d 362, 367 (Pa. Cmwlth. 2005).

Employer argues it was not prepared to meet its shifting burden on remand because it had no notice that it would have to defend itself against a retaliation claim.  The UCBR rejoins that the necessary notice was supplied by the UCBR's Remand Memo, which specified:

> Please schedule another hearing in the above matter.  **The purpose of this hearing is to allow [] [C]laimant to testify to her motivation for filing a complaint to the [PHRC] and to her claim of retaliation**.
>
> [] [E]mployer will have the opportunity to cross-examine [] [C]laimant's additional testimony and/or offer testimony in rebuttal.  The [UCBR] will render a decision based upon all the evidence in the record.
>
> The Referee should try to limit the introduction of repetitious or irrelevant matters.

R.R. at 302a (emphasis added).  However, the Remand Memo was an internal memo sent "From: Legal Department [UCBR]" "To: Referee."  *Id.*

> The record reflects that the Referee sent the parties the following order:
>
> AND NOW, April 29, 2021, an appeal having been filed with the Commonwealth Court from the decision of the [UCBR] dated[] July 10, 2020, and the case having been remanded to the [UCBR] by the Commonwealth Court for further consideration and appropriate action, said case is remanded to [the] Referee . . . as a Hearing Officer for the [UCBR], for **the purpose of scheduling a further hearing and taking additional testimony pertinent to the issues involved**.  The Referee shall submit a recording

7

of such further testimony to the [UCBR] at the earliest possible date.

R.R. at 345a (emphasis added).  Thus, the Referee did not expressly notify Employer that retaliation would be considered at the remand hearing.

This Court addressed an analogous scenario in *Brett v. Unemployment Compensation Board of Review* (Pa. Cmwlth. No. 1666 C.D. 2012, filed Apr. 4, 2013),[4] wherein the UC Service Center determined that the claimant had committed willful misconduct by falsifying his time cards.  The Referee and the UCBR affirmed that determination.  The claimant appealed to this Court arguing, *inter alia*, that the UCBR erred by not addressing whether his discharge was in retaliation for his use of leave pursuant to the Family and Medical Leave Act (FMLA).[5]  This Court held: "Even if the findings of fact [which] establish that [the c]laimant committed willful misconduct are supported by substantial evidence, [the c]laimant is correct that the [UCBR] failed to address whether his termination was in retaliation for his use of leave pursuant to the FMLA."  *Brett*, slip op. at 4.

The *Brett* Court ruled:

[T]he [o]rder of the [UCBR] must be vacated and this matter remanded for the [UCBR] to make findings and conclusions, on this record, whether [the c]laimant is eligible for [UC] benefits under the Law in light of his contention that he was discharged in retaliation for utilizing leave pursuant to the provisions of the FMLA.

*Brett*, slip op. at 4.  Similarly, here, because Employer had no notice that the Referee would consider Claimant's retaliation claim on remand, this Court must vacate the UCBR's order and again remand the matter to the UCBR to hold an evidentiary hearing on the issue of "whether Claimant is eligible for [UC] benefits under the

---

[4] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent."  Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).  *Brett* is cited herein for its persuasive authority.
[5] 29 U.S.C. §§2601-2654.

8

Law in light of [her] contention that [she] was discharged in retaliation for [Claimant lodging complaints of sexual harassment against President]."[6] *Id.*

For all of the above reasons, the UCBR's order is vacated, and the matter is remanded to the UCBR for further proceedings consistent with this Opinion.

_____
ANNE E. COVEY, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

Judge Dumas and Judge Wallace dissent.

---

[6] Given this Court's disposition of the first issue, this Court does not reach Employer's remaining issues.

Bat Conservation and : 
Management, Inc., : 
               Petitioner : 
  : 
         v. : 
  : 
Unemployment Compensation : 
Board of Review, :    No. 559 C.D. 2022 
            Respondent : 

## O R D E R

AND NOW, this 8th day of September, 2023, the Unemployment Compensation Board of Review's (UCBR) May 10, 2022 order is VACATED. The matter is REMANDED to the UCBR for further proceedings consistent with this Opinion.

       Jurisdiction is relinquished.

                                    _____

                                  ANNE E. COVEY, Judge