IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alan Schmelzer,                 :
          Appellant          :
                       :
      v.                 :     No. 1370 C.D. 2024
                       :
Slippery Rock University     :     Submitted: December 8, 2025

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE McCULLOUGH               FILED: January 21, 2026

       Alan Schmelzer (Appellant) appeals from the September 26, 2024 order issued in the Court of Common Pleas of Butler County (trial court) entering summary judgment in favor of Slippery Rock University (University), based on its determination that the retaliation claim Appellant filed against the University pursuant to Section 955(d) of the Pennsylvania Human Relations Act (Act), 43 P.S. § 955(d),[1] lacks merit. On appeal, Appellant challenges the trial court's finding that he was not subjected to an adverse employment action as a result of his deposition testimony in favor of a

---

[1] We note at the outset that, "[i]n adjudicating a discriminatory complaint, the courts construe the [Act] in light of principles that have emerged from federal precedent interpreting federal antidiscrimination statutes, particularly Title VII of the Civil Rights Act of 1964 (Title VII)." *Foust v. Pennsylvania Department of Human Services,* 305 A.3d 1128, 1133 (Pa. Cmwlth. 2023). "Although the [Act] is a state statute that exists independently of its federal counterparts, the Pennsylvania Supreme Court has chosen to 'harmonize' its construction of the [Act] with decisions interpreting federal antidiscrimination statutes that address the same concerns." *Id.*

former co-worker in a separate action against the University. After careful review, we affirm.

## Background

The relevant facts and procedural history of this case are as follows. Appellant is a former employee of the University and worked in its maintenance department in various capacities from October of 1990 until he retired in January of 2020. At the time Appellant retired, his immediate supervisor was Grounds Manager Edward Grossman, and Mr. Grossman reported to the Director of Campus Services, Dallas Cott. Approximately six months before he retired, on July 23, 2019, Appellant was deposed in a disability discrimination action against the University wherein he testified on behalf of his co-worker, Dennis Johnston (Johnston Deposition).[2] Appellant indicated during his deposition testimony that Mr. Cott was hiring unqualified individuals to work at the University. According to Appellant, Mr. Cott was aware that he testified in the Johnston case because Appellant was required to obtain Mr. Cott's permission to take leave from work to testify. (R.R. at 149.)[3] After he retired, Appellant regularly visited his former co-corkers on the University campus at its maintenance shop for lunch.

On February 1, 2022, Appellant filed a single-count complaint pursuant to Section 955(d) of the Act alleging that on May 3, 2020, four months after he retired, Mr. Cott verbally assaulted him and accused him of lying during the Johnston Deposition. (R.R. at 9-13.) Appellant averred that Mr. Cott confronted him while he

---

[2] This action is captioned *Johnston v. Slippery Rock University*. (Reproduced Record (R.R.) at 10.)

[3] The University disputes the veracity of this assertion by pointing to evidence indicating that Appellant did not take leave from work on the date of the Johnson Deposition. (University Br., at 28) (citing Appellant's leave of absence log). However, the trial court accepted Appellant's position for purposes of ruling on the motion for summary judgment. (Trial Ct. Op., at 2 n.2.)

was fishing at a public lake with his girlfriend, Deborah Rodenbaugh, and another former employee of the University, Earl Collins, with the confrontation lasting approximately ten minutes. While social distancing rules were in place due to the Covid-19 pandemic, none of the individuals present were wearing masks, and Appellant became concerned that he would contract the virus because Mr. Cott stood close to him during the encounter. Appellant further alleged that following the incident, Mr. Cott told Mr. Grossman that he "was going to look out for [Appellant] coming on campus, [with] the implication being that, if Mr. Cott found [Appellant] on campus, Mr. Cott would take steps to remove [him] from it." *Id.* Appellant averred that as a direct result of Mr. Cott's actions, he suffered humiliation, embarrassment, loss of self-esteem, and adverse health effects and that Mr. Cott's conduct was motivated by retaliation under the Act.

At his deposition, Appellant testified that on the day after the confrontation with Mr. Cott he went to the University and spoke with a union steward, Thomas Sanderson. Appellant averred:

> A. [Mr. Sanderson indicated that he] was talking to Ed Grossman, and Ed Grossman had told him what happened at the pond, and . . . Ed Grossman told him that Dallas [Cott] told him that he was going to be looking for me coming on campus and, if he saw me coming on campus, he was going to have me physically removed.
>
> Q. [] So you didn't hear this directly from Dallas [Cott]; you heard this from Tommy Sanderson?
>
> A. Yes.
>
> Q. You didn't even hear it directly from Ed Grossman; right?
>
> A. No.

3

. . . .

Q. You never spoke to Dallas Cott about this directly; did you?

A. No, because I wasn't supposed to have any interaction because the Denny Johnston lawsuit was still going on, and I wasn't going to jeopardize it.

(R.R. at 199-200.)

Appellant contacted University police after the incident and spoke to the Chief of Police who advised him that the University was open to the public and that Mr. Cott could not prevent him from going onto the campus. (R.R. at 211.) Appellant testified he never had any interaction with Mr. Cott after the lake episode, that he visited his former co-workers at the maintenance shop thereafter, and that no one has ever attempted to remove him from the University campus. (R.R. at 204-05.) Appellant also testified that he attended basketball games in the fall of 2020 and that he did not feel deterred from visiting the campus at that time. (R.R. at 206-07.) As to the damages he sought as a result of the incident, Appellant averred:

Q. What damages are you claiming in this lawsuit?

A. Humiliation in front of my girlfriend Debbie Rodenbaugh, Earl Collins' family, and the numerous people that were at the pond; also, after this lawsuit is over, am I going to worry about him retaliating against me further; and my fees.

Q. Can you describe for me how you were humiliated and embarrassed? What about it was humiliating and embarrassing?

A. Because he was calling me a liar, making me out to just be saying stuff that wasn't true. I'm not a liar.
. . . .

4

Q. Okay. Going back to the issue of the emotional distress you say you suffered here; did you seek any counseling for how you felt about that interaction?

A. No.

Q. So you have never seen a counselor or a therapist at all since this incident?

A. No.

Q. Why not?

A. Because I figured I'm just going to stay away from him.

(R.R. at 204, 207.)

On April 26, 2024, after completion of discovery, the University filed a motion for summary judgment. The trial court, after considering the parties' filings and hearing oral argument, granted the University's motion for summary judgment by memorandum and order entered September 26, 2024. In doing so, the trial court determined:

> To state a claim for retaliation under Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.] or the [Act], a plaintiff must show that (1) []he was engaged in a protected activity; (2) subsequent to participation in the protected activity, the plaintiff was subjected to an adverse employment action; and (3) there is a causal connection between participation in the protected activity and the adverse employment action. If the plaintiff is able to make out this *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Finally, the burden shifts to the plaintiff to show that the employer's proffered reasons are pretextual. *Daniels v. School District of Philadelphia*, 776 F.3d 181, 193 [(3d Cir. 2015).]
> . . . .

5

An adverse employment action is an action taken by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) and *Uber v. [Slippery Rock University of Pennsylvania]*, 887 A.2d 362, 368 [(Pa. Cmwlth. 2005)].

The facts set forth in the light most favorable to [Appellant] reveal he was informed that Cott threatened to have him removed from the maintenance work shed and/or campus. However, [Appellant] admits that Cott never took any action himself, nor did he direct anyone to remove [Appellant] from the maintenance work shed or campus. [Appellant] visited the maintenance work shed and attended events on campus multiple times after the threat was made. [Appellant] testified in his deposition that he did not feel deterred from going on campus through the fall of 2022. No action was taken by anyone, including [the University], to prohibit or restrict his entry or moving about campus, including the maintenance work shed. In other words, there is no asserted fact that establishes his position as a [] retired employee with all the benefits attached thereto was negatively affected.

. . . .

In *Burlington [Northern & Santa Fe Railway Company v. White*, 548 U.S. 53 (2006), the United States Supreme Court opined that] "[a] plaintiff must show a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Illori [v. Carnegie Mellon University*,] 742 F.Supp.2d 734 at 758-59 [(W.D. Pa. 2010)], quoting *Burlington* 548 U.S. 53 at 68. **Burlington goes on to require that the harm must be significant and not trivial**. *Id*. at 759.

Here, there is no evidence asserted of any harm to [Appellant] from the threat by Cott that he would take action to have [Appellant] removed from campus. Even if there

6

were, the harm threatened was not significant to a retired employee where the access to campus was open to the public. Likewise, being prohibited from meeting with former co-workers for lunch at the maintenance work shed would be trivial. Yet, no action was taken to follow through with the threats. For those reasons, there was no "error of law or fact" [] in granting summary judgment for failure of [Appellant] to produce sufficient evidence to establish the second element of a [] retaliation count, an adverse employment action by [the University].

. . . .

The interaction at issue occurred only after [Appellant] himself was telling another [University] employee [Earl Collins] about the *Johnston* [*v. Slippery Rock University*] case and the working environment. He was discussing Cott's role in that with the other employee. [Appellant] asserts that Cott called him a liar, came too close to him, and acted like a "bully." He states that he was "fearful" of contracting Covid-19. There is no assertion that he did contract Covid-19. [Appellant] states he suffered humiliation, embarrassment, and loss of self-esteem. He did not seek therapy or counseling. There is no fact asserted by [Appellant] of any adverse health effects.

. . . .

When reviewing the collective case law, it is evident that the interaction between [Appellant] and Cott at the lake/pond does not meet the definition of an adverse employment action. [Appellant] satisfied, for the purpose of summary judgment, the first element of retaliation under the [Act] since he was engaged in a protected activity. However, he has failed to produce facts that would meet the second element. Since there is no adverse employment action, there is no need to address the third element of causation. For these reasons, the trial court did not commit an error of law in granting [the University's] motion for summary judgment.

(Trial Ct. Op., 1/24/25, at 5-8.)

7

Appellant timely appealed and filed a Concise Statement of Errors Complained of on Appeal on November 4, 2024. *See* Pa.R.A.P. 1925(b). The trial court entered an opinion on January 24, 2025. *See* Pa.R.A.P. 1925(a).[4]

### Discussion

On appeal,[5] Appellant challenges the trial court's determination that the University did not subject him to an adverse employment action prohibited by Section 955 of the Act. According to Appellant, the trial court focused only on the fact that he was never prevented from entering the University campus, while failing to consider the impact of the confrontation between himself and Mr. Cott, wherein Mr. Cott called

---

[4] The trial court and the University maintain that Appellant waived his arguments on appeal concerning the May 3, 2020 confrontation at the lake between himself and Mr. Cott because of the wording of his 1925(b) statement, which reads:

> Whether the trial court made errors of law and fact when it determined that [Appellant] had failed to produce sufficient evidence to establish that he was subjected to an adverse employment action by [the University]? (the threat of retaliation kept [Appellant] from returning to the maintenance work shed site as stated in [his] brief.)

(R.R. at 285; Appellee's Br., at 14; Trial Ct. Op., at 7); *see also* Pa.R.A.P. 1925(b)(3)(iv), (4)(vii) (providing that any issues not raised in Rule 1925(b) statement are waived.) Despite the lack of clarity in the phrasing of Appellant's Rule 1925(b) statement, we will address his arguments on appeal as they are apparent from the record and were addressed by the trial court.

[5] This Court will reverse the grant of summary judgment where there has been an error of law or abuse of discretion. Summary judgment should only be granted if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. The Court has recognized that whether genuine issues of material fact exist is a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. We must review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Goodall v. Pennsylvania Department of Corrections*, 339 A.3d 557, 561 (Pa. Cmwlth. 2025).

Appellant a liar in public and violated social distancing rules, putting him in fear of contracting Covid-19. (Appellant's Br., at 17.) Appellant additionally faults the trial court for relying on this Court's decision in *Uber*, 887 A.2d 362, instead of on the United States Supreme Court's subsequent opinion in *Burlington*, 548 U.S. 53, which emphasizes that courts must consider context and "all of the circumstances" involved in a retaliation case when evaluating whether an adverse employment action has occurred. *Id.*

We begin by observing that the Act prohibits, among other unlawful discriminatory practices, retaliatory conduct. *Harrison v. Health Network Laboratory's Limited Partnerships*, 232 A.3d 674, 682 (Pa. 2020). Section 955 of the Act provides in relevant part:

> It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:
> . . . .
>
> (d) For any person, **employer**, employment agency or labor organization **to discriminate in any manner against any individual** because such individual has opposed any practice forbidden by this act, or **because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act**.

43 P.S. § 955(d) (emphasis added).[6]

---

[6] Title VII's antiretaliation provision reads as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management

**(Footnote continued on next page…)**

To establish a *prima facie* case of retaliation, a complainant must show that:

> (i) [he] was engaged in a protected activity; (ii) [his employer] was aware of the protected activity; (iii) **subsequent to participation in the protected activity [the complainant] was subjected to an adverse action**; and (iv) there is a causal connection between participation in the protected activity and the adverse action. Upon showing a *prima facie* case, the burden shifts to [the employer] to articulate a legitimate, non-discriminatory reason for its action. Finally, the burden shifts to [the complainant] to show that [the employer's] proffered reasons are pretextual.

*Jackson v. Pennsylvania Human Relations Commission*, 308 A.3d 900, 907 (Pa. Cmwlth. 2024) (emphasis added).

Here, as previously noted, the trial court concluded that Appellant failed to meet the adverse action element necessary to establish a *prima facie* case of retaliation. In *Uber*, this Court explained that an "adverse employment action is an action taken by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Uber*, 887 A.2d at 368. "In other words, a plaintiff cannot prevail on a retaliation claim unless there is evidence that the challenged action has negatively impacted a present or future employment relationship." *Id.*

---

committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a).

10

In *Burlington*, the United States Supreme Court addressed what conduct constitutes an adverse action in the context of a Title VII case, stating:

> the antiretaliation provision protects an individual **not from all retaliation, but from retaliation that produces an injury or harm** . . . **a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination**. **We speak of material adversity because we believe it is important to separate significant from trivial harms**. The antiretaliation provision seeks to prevent employer interference with unfettered access to Title VII's remedial mechanisms. We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. **An objective standard is judicially administrable**. **It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.** We have emphasized the need for objective standards in other Title VII contexts, and those same concerns animate our decision here. We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

*Burlington*, 548 U.S. at 67–69 (emphasis added).

Instantly, the alleged retaliatory act of Mr. Cott confronting Appellant at the lake occurred four months after Appellant had retired. Because Appellant was no longer employed by the University, there is no evidence that "the challenged action [] negatively impacted a present or future employment relationship" with the University.

11

*Uber*, 887 A.2d at 368.  Likewise, nothing in the record indicates that the incident had any effect on Appellant's benefits or privileges as a former University employee. Instead, Appellant's own testimony established that he was not deterred from going onto the University campus after the confrontation with Mr. Cott, as he visited the campus on multiple occasions to have lunch with his former co-workers and to attend sporting events.  While Appellant testified to his subjective belief that Mr. Cott could remove him from University grounds, he openly acknowledged that Mr. Cott never told him this directly, that no one ever attempted to remove him from the campus, and that the University police informed him that this was not possible, as the University is open to the public.

Regarding Appellant's claim he suffered embarrassment and humiliation because Mr. Cott called him a liar in front of his friends, this assertion does not demonstrate any negative impact on his employment, and he never sought counseling or therapy to address any alleged repercussions.  As to Appellant's fear of contracting Covid-19 because Mr. Cott stood close to him during the encounter, we reiterate that the "antiretaliation provision protects an individual not from all retaliation, **but from retaliation that produces an injury or harm**." *Burlington*, 548 U.S. 67 (emphasis added).  In short, the record reflects that Mr. Cott's conduct did not harm Appellant in any materially adverse way, and, in so determining, we emphasize *Burlington*'s imperative that we "separate significant from trivial harms." *Id.*

Finally, with respect to Appellant's claim that the trial court disregarded the United States Supreme Court's decision in *Burlington* in favor of applying this Court's earlier decision in *Uber*, we disagree.  First, we observe that Appellant's assertion is a factually incorrect red herring, as the record plainly demonstrates that the trial court assessed his retaliation claim in light of the principles set forth in both the

*Burlington* and *Uber* decisions. (Trial Ct. Op., at 6-7.) Furthermore, the *Burlington* Court's decision addressing the adverse action element in the context of a Title VII case did not overrule *Uber*'s assessment of the Act, as "the [Act] is a state statute that exists independently of its federal counterparts[.]" *Foust*, 305 A.3d at 1133. Our Supreme Court has explained that "the decisions of the [United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counter-part provisions of State Law." *Commonwealth v. Ludwig*, 594 A.2d 281, 283 (Pa. 1991). Appellant's argument to the contrary is meritless.

## Conclusion

Based on the foregoing and viewing the evidence in the light most favorable to Appellant as the non-moving party, *Goodall*, 339 A.3d at 561, we conclude that the harm Appellant alleges to have sustained cannot support a determination that he suffered an adverse employment action, and that he therefore failed to establish a *prima facie* case of retaliation against the University in violation of the Act. Accordingly, the trial court correctly determined that the University was entitled to summary judgment.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alan Schmelzer,                 :
        Appellant       :
                           :
        v.              :    No. 1370 C.D. 2024
                           :
Slippery Rock University   :

## ***ORDER***

AND NOW, this 21st day of January, 2026, the September 26, 2024 order issued by the Court of Common Pleas of Butler County entering summary judgment in favor of Slippery Rock University is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge